Good afternoon, counsel. We'll hear Pichardo v. Atty Gen now. Thank you, counsel. May it please the Court, Your Honors, Jessica Southwick for the petitioner. I'd like to reserve two minutes for rebuttal, please. Very well. The issue here today is whether Mr. Pichardo's guilty plea to a Pennsylvania misdemeanor crime of intimidation of a witness equates to an aggravated felony under the Immigration and Access to Nationality Act, which would bar him from eligibility for cancellation and removal. Mr. Pichardo has been a lawful permanent resident admitted in the United States for over 15 years now. Okay, so here's my question, because it sounded like you were going to do some accent. We're good. In Florence, we found that the statutes in that case did not relate to one another because they were targeted completely different criminal conduct. However, here, the focus of the actus reus on the B-3 is on the use of, quote, intimidation, threats, and corrupt persuasion that hinders, delays, prevents certain officers from receiving information about inter alia, completed or possible federal crimes. And the focus of the actus reus in the 4952A is on the intimidation of witnesses or victims to hinder them from informing or reporting any information, documents, or things to certain public officials relating to the commission of the crime. So when you look at those two, at the very least, then don't both A-1 and B-3 criminalize intimidation of the transmission of information to law enforcement officers and judges or the attempt thereof that relate to the commission of a crime? And if so, then how can these statutes be read to target completely different criminal conduct? I know that was a mouthful. But that's certainly the heart of it. Yes. So the Pennsylvania statute, as you explained, is about intimidation, keeping somebody from reporting to a law enforcement officer, to a judge. But also it relates to the interference with the administration of criminal justice. And that's really where we differentiate from the jurisprudence of the Third Circuit and how they have looked at the Section 1512 crimes in terms of whether it's an official proceeding or whether it's an investigation-related clause. And when you look at the definition of administration of criminal justice in the Pennsylvania statutes, you're really looking at a very broad scope of activities. We're talking about the prevention, control, reduction of crime, the collection, storage, dissemination, or usage of criminal history and record information. But take a step back and answer my initial question, which is, at the very least, don't the two recitations that I gave you criminalize intimidation of the transmission of information to judges? And doesn't that relate to the commission of a crime? Because the question, obviously, right? I mean, that's where we're at. Is there the overlap or is there really a separation that allows you to make the argument that you're making? Well, and I know that this doesn't hinge on specific necessarily, but there is a difference in the mens rea there. The Pennsylvania statute is either a knowing or with intent type of statute, whereas 1512b3 is with intent to hinder, delay, or prevent the communication. I thought that Dennis took that mens rea argument off the table, essentially. Sure. It took it off the table in terms of you having to find this critical element of specific intent. So it's not necessarily the hinge, but it is still part of the analysis. Even in Dennis, it was looking at the mens rea and the actus reus together. So it's not necessarily, as I said, the hinge, but it's still part of the equation and part of the analysis. Connected to this, I'm glad you brought up both mens rea and actus reus. Your client's notice of appeal did not mention the actus reus. The mens rea issue was raised. The brief before the BIA did not mention the actus reus issue. So even if we could treat this all as part of the same claim, there's a distinct issue here that wasn't preserved. Why should we breach it? Why should we excuse that when, really, this is the first time you're bringing it up? Well, at the BIA level, we're dealing with a jurisprudence there that is not necessarily the same as the Third Circuit. And they were still citing to the issues of specific intent. And really, even though they cited to that and said, you know, this requires specific intent, they sort of pivoted and then... You preserved the mens rea issue, yes. But the actus reus issue was not in the notice of appeal, was not in the brief to the BIA. So why should we consider it? I think it's in the overarching idea that you have to compare the analogous federal statute against the Pennsylvania statute and look at the breadth of them against each other. And it's still part of the idea that the Pennsylvania statute is far broader than the federal statute, which is sort of the issue that we've... Let's assume we overlook the waiver, which I think there is, at least to the issue, not the claim. On the actus reus, you and Judge Greenway started talking about this. I'm looking at 1512, the federal statute. B-3 is not just about judges. It's about law enforcement. It's not just about the commission of a crime. It's a possible commission of a crime. F says... So we're not even talking just about judicial proceedings. It needs to be an official proceeding, but the official proceeding need not be pending or about to be instituted. It's somewhere off foreseeable. That's enough. So why doesn't that do enough work here? That sounds in the same category as administration of justice. And we know from Dennis that we don't need a strict overlap. This is not a traditional categorical approach. This is a related-to approach. Why isn't the administration of justice related to foreseeable official proceedings? Once we're talking crimes, everyone, the police are getting involved because they're thinking about a criminal prosecution leading to a prosecution in court and a conviction. So even within the context of 1512 F-1, this court in Florida still said, you know, you're not... Obstruction of justice doesn't cover offenses that are unmoored from judicial proceedings.  Guadalupe. You familiar with the case? Correct. All right, Guadalupe. Prison supervisor learns that some guards may have engaged in misconduct. Tells him not to cause trouble, not say anything. No one had opened any investigation. Nothing had started at that point. And yet he had no problem saying that that amounted to obstruction of justice. So why doesn't Guadalupe say, if everybody knows that this is foreseeable, that's enough? Well, I believe that Guadalupe was a 2005 case. And then in 2013 is the U.S. v. Tyler case, also a Third Circuit case. And that really talked about the establishment of separate jurisprudence with the official proceedings clauses and then also the investigation-related clauses, which I believe was at issue in the Guadalupe case. Yeah, but the problem with the official proceeding issue is, you know, there's Bailey from the First Circuit and Guadalupe, which both say, let's see, that Bailey says v. 3 doesn't require the prescribed conduct to occur in the context of an official proceeding. And Guadalupe, you've just gone over. Are you saying Tyler departs from those in their view of what official proceeding is and what it means in this context? I'm saying Tyler adds sort of a stronger bar for it, saying that now the government has to establish a reasonable likelihood that the person whom the defendant believes may communicate with the law enforcement officer would in fact make that communication. And I don't, under our IOP 9.1, the earlier precedent controls. That's a problem for you because you're relying on Flores and Dennis' earlier, but it's also a problem with Guadalupe. We conclude that proving a violation of 1512 v. 3 does not depend on the existence or imminency of a federal investigation, but rather on the possible existence of a federal crime. I don't see, even if we read Tyler the way you do, the best you get is a later precedent conflicting with an earlier precedent that's on point. I don't see how you can make the official proceeding limited in time to when it's just on the cusp of being filed. Well, I believe that, let me rephrase this. The Pennsylvania statute isn't necessarily even contemplating a proceeding at issue. It's talking about the administration of criminal justice, and it focuses heavily on the administration part of that. The prevention of crime, the reduction of crime, and even the management of information relating to crimes after the fact. I'm sorry. No, you just prompted what's going to be another question, but finish. I'm so sorry. No, you're fine. And so, despite the fact that we're looking at timing issues regarding investigations or when proceedings are starting, there's still the broader issue that the Pennsylvania statute contemplates acts and conduct outside of the scope of the proceeding. My concern is that you're drawing some gradations, which I'm not sure I agree with, but even if I agreed with them, they're gradations on a spectrum. They don't negate that it is relating to, in a sense, there's some kind of familial resemblance. There's a logical connection. I think for you to defeat relating to, you have to say this is different in kind. Now, in Flores, we're able to say it's different in kind. That was a case where the offense was just directed at the principle of the crime, not at the justice system at all. It was an omission in keeping her mouth shut. It was not an act getting in the way. This is an act, and it is a classic act of witness intimidation. That's quintessential obstruction of justice. So you can't make this just look a little bit different. You have to make it look different in kind from what 1512 is. I don't see the difference in kind. Well, I think it is certainly a narrow issue, and we understand that. And I think, especially in the context of immigration cases, you have to make these narrow judgments because of the severity of the consequences. And we believe that there's sufficient, the difference really is in what you're trying to influence. And the influence isn't necessarily tied to these criminal proceedings, but also the administration of criminal justice. And I think that that's where the difference lies. Well, I mean, let's look at administration of criminal justice for a second, right? So the definition of administration of criminal justice includes activities, excuse me, directly concerned with pre-trial release, post-trial release, or correctional supervision or rehabilitation of accused persons or criminal offenders. Now, how are those that I've just set out, those destructive elements substantively different from B3 and D2, which implicate the violation of conditions of probation, supervised release, parole, or release pending judicial proceedings? They sound eerily similar. Certainly, and those portions do. And there's overlap there. But it is those outlying sort of conditions on it, both at the beginning of it and at the end of that clause, the prevention, control, reduction of crime, the collection, storage, dissemination of criminal history and record information that are what put the Pennsylvania statute broader than the federal statute. But when you talk about prevention, if you look at, let's see now, 9102, the prevention of and control or reduction of crime falls under administration of justice. But under B3, B3 criminalizes the hindering of information relating to, and I think Judge Bebas raised this before, the commission or possible commission of federal offense. So both are related to the preventative purpose. I would say the crime that's being concealed or that they're trying to prevent somebody from speaking to or reporting is, it can be tied to, in the federal sense, a crime that's relating to an actual criminal investigation or a trial that's on hand. And in the Pennsylvania context, they can be trying to, excuse me, they can be trying to inhibit somebody from reporting on activities that are being interfered with on an administrative context. Thank you, Morgan. You're welcome. Thank you, Honors. Thank you. May it please the Court. My name is Jesse Buesen. I represent the Attorney General. Just to address some of the issues that were raised in the initial statements, both Flores and the decision in Tyler were addressing a different section of 18 U.S.C. 1512 than is relevant here. They were addressing 18 U.S.C. 1512 C2, which explicitly contains a requirement that the crime have to do with official proceedings, which, of course, B3 here doesn't contain that requirement. And 1512 F indicates that for the purposes of section, an official proceeding may not be pending or about to be instituted at the time of the offense. And as we said in our brief, we also have the decision in Guadalupe, which defines what's necessary to sustain a conviction under 1512 B3 as simply being the possibility of an investigation into a federal offense. Do you agree with, as I understand it, the petitioner's fundamental argument that the Pennsylvania statute's definition of administration of criminal justice includes a lot of conduct that is not found in the federal analogs? Well, much of the conduct in 9102 is conduct that does have to do with a specific judicial proceeding, but also much of it has to do with investigative proceedings, which are the sort of thing that under B3 are the types of behavior that are part of that statute. So for the control, reduction, apprehension, detention, pretrial release, and even collection, storage, and dissemination all have a sort of investigatory factor to them that's also incorporated under B3. In addition, as stated, the actus reis here is the intimidation of a third party to refrain from reporting information to law enforcement or judicial official about the commission of a crime. And that's consistent across both the Pennsylvania statute and the federal statutes that we cite here. And that's different from Flores, where neither the mens rea or actus rea there addressed were turned towards the same behavior. In Flores, it was directed towards a principle, whereas here, the actus rea is essentially the same. And the mens rea here is arguably the same in that in both cases, it's directed towards somehow inhibiting investigations into criminal proceedings or judicial proceedings themselves. So your point is that the administration of justice is modifying the mens rea here, but you still have to travel down to the actus reis, which is all pegged to commission of a crime at the end of it. Correct. Right. So at most, your argument then bears on whether the mens rea or the mentis rea are the same, not the commission of the crime that is ultimately a touchstone at the end of 4954. Right. That the actus rea doesn't appear to be at question here, which is one thing immediately that separates this out from Flores. And at best, there may be a disconnect between the mens rea of these statutes, although I think looking at 9102, it's still directed at investigatory behavior towards the commission of an offense or judicial proceedings, which is well within the sort of behavior that the court held in Guadalupe was sufficient to show a violation of B3. Can you speak for a moment to the waiver argument that Judge Bevis raised with your adversary? Again, the issue with respect to the actus reis wasn't raised below. So that's certainly an issue that hasn't been an issue either before the board or I believe even before this court. The argument has been solely aimed at whether there is a difference in the mens rea and whether that bears on this case. So from your perspective, it's a short opinion. Waiver on actus reas and Dennis takes care of mens rea. Yes, Your Honor. And unless the court has any other questions. Okay. Thank you. Thank you. I'd just like to take a minute to address the point that at best there is a disconnect in the mens rea and that still is part of the analysis that is, you know, a big component, especially when you're factoring in the actus rea. that the administration of criminal justice is part of the mens rea for the Pennsylvania statute versus the federal statute. Anything else to say on the waiver issue? Well, I believe that the broader arching issue is that the comparison is between the Pennsylvania statute and the federal statute and that the Pennsylvania statute is broader. And I think that that point has been consistent throughout. And I think in adapting to the arguments made at the immigration court level and pulling it through to now having to address the Third Circuit's perspective on this issue, I don't think it's been waived. It's just been the idea that you have to, that the audience has been different and the issues have been different in front of those audiences. Okay. Thank you so much. Thank you. Thank you, counsel, for your arguments. We'll take the matter under review.